WM. H. TAYLOR AND ALS. *versus* WALDO T. PIERCE AND ALS.

A. B. and C., tenants in common of timber lands, in consideration of a permit to D. and E. to cut timber thereon, received severally the notes of said D. and E., each in proportion to his interest in the land.

D. and E. brought an action against A., B. and C., jointly alleging a partial failure of consideration of the notes, and claiming to recover back a portion of the amount.

Held that such *joint* action could not be maintained.

Where, by the fault of the plaintiffs, they failed to obtain timber enough to pay the notes they cannot set up the deficiency against the payment of the notes or recover it on the money counts, either jointly or severally.

A lien upon the timber cut, being stipulated for to secure the payment of the notes, no action for money had and received can be maintained while the notes remain unpaid in the hands of the payee.

EXCEPTIONS were taken to the rulings of APPLETON, J., at *Nisi Prius.*

This was an action of assumpsit on account annexed for $4000,00, being the amount of the three notes hereafter described, the stumpage on the timber cut being credited with a count for money had and received, and a special count on a permit to cut timber, given by the defendants to the plaintiffs, dated December 10, 1853, and extended, and the receipt of said notes acknowledged by writing on the back, dated July 1, 1854.

The plea was the general issue, with a brief statement disclaiming joint liability. The verdict was for plaintiffs, for $2249,78. The plaintiffs failed to go on to the premises in the winter of 1854. It appeared in evidence, that the plaintiffs went on to the premises described in the permit in August, 1854, and cut about eight hundred logs, and took off their team and worked on the adjoining township till January 6, 1855, when they again went on to these permitted premises with two four ox teams, and stayed there till February 8, when they again finally left, alleging that they had hauled all the timber, and went back on to the Hemenway township, where they worked till March 20. There was evidence by the plaintiffs, tending to show that they went on as early as they could, and the contrary, and that there was no timber left on the premises, which by the contract the plaintiffs were required to haul, and also on the part of the defendants, tending to show that they left on said premises a large quantity of such timber as should have been hauled, estimated by the witnesses, called by the defendants at from 490,000 feet to 4,500,000 feet. It appeared that on the 10th of October, 1855, a few days after said notes fell due, the plaintiffs paid on that one which was taken by said Prentiss, and which he still held, five hundred twenty-five dollars, and which was endorsed on said note; on that one which was taken by said Pierce, and which he still held, the same amount, and on that one for two thousand dollars which was taken by said Jenness, and which he had endorsed and trans-

ferred, before it was due to Hinkley & Egery, the sum of eleven hundred dollars; which several sums were the amount of the stumpage cut on said premises, with interest from the date of the extension on the back of said permit. It also appeared that said Hinkley & Egery had sued the said two thousand dollar note, and recovered execution against said Taylor thereon for the balance due on it in October, 1856, after this suit was brought and the said Taylor in said October paid the execution. It also appeared that said Prentiss sued the said Taylor in September, 1856, after this writ was served on him, upon the said one thousand dollar note which he took, and that said Pierce still retained his one thousand dollar note, and had not sued it. That the township of which the premises permitted formed a part, were at the time of said permit and its extension, owned as tenants in common and undivided, one fourth by said Prentiss, one fourth by said Pierce, one fourth by said Jenness by deed, and the title of the other fourth is in said Pierce, and that said Jenness managed one half; that said notes were owned severally, each by the man who took it; that said Jenness was insolvent when said notes were given, and had since so remained.

It was in evidence, that about the first of December, 1856, the defendant Prentiss called on the plaintiff Taylor, and said to him that the scaler of the lumber cut under said permit. should be sent on to estimate the timber left on the premises, and asked if he would send a man with him, and that said Taylor did send such man, it being agreed that Prentiss should pay the wages of the scaler, and Taylor of the man he sent with him, and that the expenses of the two should be borne jointly by Prentiss and Taylor; that said scaler then examined the premises, and made his report in writing to the proprietors. At the trial the defendants offered this report in evidence, and contended that it was conclusive, and objected to the admission of any other evidence of those matters, but the objection was overruled, and the report excluded by the court, on the ground that the examination was

Taylor and als. *v.* Pierce and als.

not seasonably made, but it was received as part of the scaler's deposition. Taylor testified that before paying the stumpage he asked Pierce how he should pay it, and that said Pierce told him to pay it on the three notes in the manner that he did pay it, as before stated.

The defendants contended that their receipt on the back of the permit for the notes were several, and not joint, and therefore the action could not be maintained; that the notes were given as a consideration for the extension of the permit, which could not be procured without, and because the plaintiffs had failed to operate the previous year; that the extension was a consideration for the notes, which were to be paid whether timber enough was in the permit or not, or was hauled or not, and that therefore the action could not be maintained. Also that the suit could not be maintained, because at the date of the writ the plaintiffs had paid nothing on the notes, but the amount of the stumpage on the timber cut, and which they had credited in their account annexed. But all these points, though seasonably presented on a motion for nonsuit, were all overruled by the court, for the purposes of the trial merely, and the jury were instructed adverse to them all. The defendants also contended, that if there was timber enough on the premises of the quality named in the permit, to pay the notes at the rates of stumpage agreed on, and that the plaintiffs, by putting and keeping on the teams and using the diligence required by the permit, might have hauled it, that the notes must be paid, and that the plaintiffs could set up no defence, unless they had done all the contract required, to haul the timber to pay the notes; but the court overruled the position, and instructed the jury that if there was timber left on the premises which the permit required to be hauled, and which the plaintiffs, by putting and keeping on the teams and using the diligence required by the permit, might have hauled, that was only a matter of damages to be allowed the defendants, in offset to the plaintiffs' claim, and that the rule of damages was the difference between the contract price of the timber so left

and the present value of it, and that if the timber so left was worth as much now as the contract price, there would be no damages, but interest on the same; or if there was no timber left, there would be no damages. The court also instructed the jury not to allow the defendants the stipulated damages of five hundred dollars provided for in the close of the permit; that they could not have this five hundred dollars, over and above the actual damage, but they were to allow the defendants the actual damages. The defendants requested the court to instruct the jury that to the damages which they might find under the above instructions, they would add interest, from the first day of July, 1854, the date of the notes, (which were on interest,) on the value of the contract price of all the timber left, which would and might have been hauled to the amount of $2,060,63, being the balance of the $4000,00 notes over the stumpage paid, and which interest would continue up to such time as the stumpage would become due under a similar permit, to be given as soon as the jury might find that a lumbering operation could now be commenced, but the court refused to give the instructions, but did instruct the jury to allow interest on the damages found from July, 1854, to the time of the trial. The defendants also requested the court to instruct the jury to add to the damages such sum as they might find just for insurance against fire on the timber left on said premises, which ought to have been and might have been hauled, from the time it was left till the date of the writ. Also to add such sum as the defendants would have to pay for commissions to an agent, to permit the timber so left, superintend the operation, and collect the stumpage. Also to add to the damages the expenses to defendants occasioned by the plaintiffs not having hauled such timber as they should and might have hauled, including all the expenses of defending this suit, if they found that this suit was occasioned by the plaintiffs not hauling such timber. These three last requested instructions were withheld, and the jury instructed not to allow any damages on either of said

grounds. To the above rulings and instructions, and re-
fusals to instruct, and the admission and rejection of evi-
dence, the defendants excepted.

## LEASE.

This memorandum of an agreement and conditional license,
made and executed this tenth day of December, A. D. 1853,
by and between Henry E. Prentiss, W. T. & H. Pierce and
Horace Jenness, of Bangor, in the County of Penobscot and
State of Maine, of the one part, and William Hemenway and
William H. Taylor, of ———, in the County of ——— and
State of ———, of the other part, witnesseth, that the said
Pierce, Jenness and Prentiss hereby grant the said Hemen-
way and Taylor possession during the ensuing logging sea-
son only, on the conditions and restrictions hereinafter men-
tioned, to enter with two six ox teams, upon lots numbered
five and six, range first, and the south part of lots five and
six, range second, in township forty-one, according to a sur-
vey and plan of said township, no lumber to be hauled that
will interfere with the teams hauling into Gasabcas lake, and
cut and remove therefrom white and Norway pine timber
suitable for logs, which conditions and restrictions are that
said grantees shall go upon said premises with two six ox
teams, as aforesaid, at the usual season, said teams to be well
manned and furnished, and remain there during the usual
logging season, in diligent and active employment. Said
logs to be driven to the Machias boom by said grantees, as
early as practicable after cut. Said lumber to be landed
in a suitable place and manner for scaling, and notice to be
given the scaler by said grantees of such place and landing;
and before the said logs are moved from said landing each
and every stick or log within the compass of his location as
he progresses, without waste or leaving such timber on the
premises as would make number four boards, Bangor survey,
which may be cut down. All lumber cut under this license
shall be scaled by some person to be appointed by said
grantors, who shall make deductions for all cavities, rots and

shakes only, and shall return to said grantors the quantity cut under this license, which return shall be final, binding and conclusive between the parties hereto, in the settlement of the stumpage. Said grantees shall pay to the said grantors four dollars per thousand for all white pine, two dollars and twenty-fine cents per thousand for all Norway pine stumpage, payable by satisfactory paper payable in fifteen months from July 1, 1854, with interest. The scaler is to be boarded at the expense of said grantees, and the scale bill to be paid by said grantors. It shall be the privilege of the scaler to point out to the said grantees, whenever he may have time and deems it proper, whenever he thinks said grantees fail to comply with the foregoing conditions and restrictions; but said scaler shall not be bound to point out to said grantees such failure, or examine the premises until the cutting and hauling is completed, at which time he shall examine the premises cut on and report to said grantors such timber as should have been cut and removed agreeable to the foregoing conditions; also, what sum said grantees shall pay as damage, which report shall be binding and conclusive between the parties hereto, in the settlement of claims under the agreement. And said grantees hereby agree that the said grantors shall reserve and retain full and complete ownership and control of all lumber which shall be cut and removed from the aforementioned premises, wherever and however it may be situated, until all matters and things appertaining to, or connected with, this license, shall be settled and adjusted, and the sum or sums due or to become due for the stumpage shall be fully paid, and all the paper given for it paid, and any and all damage for non-performance of any of the agreements or stipulations herein expressed shall be liquidated and paid. And the said grantees hereby further agree, that in cutting and managing said lumber while in possession they will act openly, honestly and fairly, that they will not directly or indirectly conceal from the scaler, or dispose of without the consent of said grantors in writing, otherwise they shall forfeit the whole lumber cut under this

contract. And if any sum of money shall have become due by any of the stipulations or agreements hereinbefore expressed, and shall not be paid or secured in some of the modes herein expressed, within ten days thereafter, then in such case said grantors shall have full power and authority to take all or any part of said lumber, wherever or however situated, and to sell and dispose of the same either at private or public sale, for cash, and after deducting their reasonable expenses and commissions, and all sums which may then be due or may become due, for any cause whatever, as herein expressed, the balance, if any there may be, they shall pay over on demand to said grantees, after a reasonable time for ascertaining and liquidating all amounts due, or which may become due either as stumpage or damages.

And the said grantees hereby agree with the said grantors to go upon the premises with the said two six ox teams, well manned and furnished, in due and proper season, and cut and remove timber as aforesaid, and truly and faithfully do and perform each and every condition and stipulation expressed in this license and agreement, hereby binding themselves in the full and liquidated sum of four hundred dollars, well and truly to be paid the said grantors on demand, over and above the actual damage which said grantors may sustain, by the non-performance of any agreement herein before contained. In witness whereof the parties have hereunto interchangeably subscribed their names, this tenth day of December, A. D. 1853.

WM. H. TAYLOR,
W. T. & H. PIERCE,
HORACE JENNESS,
W. H. HEMENWAY,
H. E. PRENTISS.

BANGOR, July 1, 1854.

The within permit is extended for the next ensuing lumbering season, with the following alterations, viz.: said Hemenway is not to cut on that part of lot No. 6, range 2, which lies west of Machias river, but may cut on that part of No.

35

6, range 3, which is east of that river; twenty-five cents per thousand is to be added to the stumpage of the Norway. We have received the note of Wm. H. Hemenway and Hemenway & Hersey, running to Wm. H. Taylor, and by him endorsed, dated July 1, 1854, and payable with interest in fifteen months, for the sum of two thousand dollars, which is taken by said Jenness, a similar note for one thousand dollars, which is taken by said W. T. & H. Pierce, and a similar note of one thousand dollars, taken by said H. E. Prentiss, which *notes when paid are to be in payment of four thousand dollars, of the above stumpage,* and the balance is to be paid according to the permit, by satisfactory paper, in fifteen months from July 1, 1855, with interest, which paper is to be given by July 1. The owners' lien on the timber to continue till all the papers are paid.

HENRY E. PRENTISS,
W. T. & H. PIERCE,
HORACE JENNESS.

This case was argued with great ability by *George Walker* and *Henry E. Prentiss,* counsel for the defendants, each submitting able arguments in support of the exceptions.

And by *B. Bradbury and A. Hayden,* counsel for the plaintiffs.

GOODENOW, J. This case comes before us on a motion to set aside the verdict, which was for the plaintiffs; and also on exceptions. We have no full report of the evidence, and therefore cannot consider and act upon the merits of the motion.

The first exception is, that the presiding justice did not order a nonsuit, upon the plaintiff's own testimony, upon the ground that if the defendants were liable at all to the plaintiffs, they were liable *severally* for the damages claimed in this action, and not liable *jointly.*

It appears from the report of the evidence, so far as it goes, that on the tenth of December, 1853, the defendants, Waldo T. & H. Pierce, Henry E. Prentiss and Horace Jen-

ness, gave a "permit," to be noticed more particularly hereafter, to the plaintiffs in this case, to cut timber on certain lands upon certain terms and conditions therein set forth. That the firm of Waldo T. & H. Pierce owned one fourth, said Prentiss one fourth, and said Jenness one half of said lands, in common and undivided. This "permit" was in writing, and signed by the plaintiffs, W. H. Taylor and W. H. Hemenway, and by the defendants, with mutual agreements and stipulations, which need not now be noticed. The plaintiff's omitted or neglected to perform the agreement on their part within the time stipulated, whereby they became liable to pay the defendants the sum of four hundred dollars as liquidated damages, over and above the actual damages, according to the terms of said permit. On the first day of July, 1854, by an endorsement on the same, the permit was extended for the next lumbering season, with the following alterations, viz.: "The said Hemenway is not to cut on that part of the lot No. 6, range 2, which lies west of Machias river, but may cut on that part of lot No. 6, range 3, which is east of that river; twenty-five cents per thousand is to be added to the stumpage of the Norway. We have received the note of William H. Hemenway and Hemenway & Hersey running to William H. Taylor, and by him endorsed, dated July 1, 1854, and payable with interest in fifteen months for the sum of two thousand dollars, which is taken by said Jenness; a similar note of one thousand dollars, which is taken by said Waldo T. & H. Pierce, and a similar note of one thousand dollars, taken by said H. E. Prentiss, which notes *when paid*, are to be in payment of four thousand dollars of the above stumpage, and the balance to be paid according to the permit, by satisfactory paper, in fifteen months from July 1, 1855, with interest, which paper is to be given July 1. The owners' lien to continue on the timber till all the papers are paid." Which extension and alteration of the permit was signed by the defendants in this suit. The case finds that the plaintiffs failed to go on to the premises in the winter of 1854.

There was evidence by plaintiffs tending to show that

they went on as early as they could in 1855, and the contrary. And there was evidence that there was no timber left on the premises, which, by the contract, the plaintiffs were required to haul, and also on the part of defendants tending to show that the plaintiffs left on said premises a large quantity of such timber as should have been hauled. A few days after said notes fell due, October 10th, 1855, the plaintiffs paid on that one which was taken by said Prentiss, and which he still held, $525, which was endorsed on said note ; on that which was taken by said W. T. & H. Pierce, and which they still held, the same amount; and on that one for $2000, which was taken by said Jenness, which he had endorsed and transferred before it was due, to Hinkley & Egrey, the sum of $1100, which several sums were the amount of the stumpage cut on said premises, with interest, from the date of the extension on the back of said permit. The case finds that said notes were owned severally, each by the man who took it, and that said Jenness was insolvent when said notes were given, and had since so remained.

We are not prepared to say that if the defendants had, in any way, by selling the land or otherwise, prevented the plaintiffs from entering upon the premises to which the permit related, and cutting according to the terms of the permit, that an action could not have been maintained by the plaintiffs against them jointly, to recover such damages as the plaintiffs might thereby have sustained. The defendants were under no obligation to extend the permit. They were at liberty to exact new terms and conditions upon granting such extension. From reading the original contract, we are led to the conclusion that the defendants were desirous not only to contract, but to be certain that the contract should be fully performed by the defendants. To make certain the sale of stumpage to the amount contracted for, and within the time specified. The timber was exposed to fires and trespassers, and they no doubt wished to convert it into money or other property less exposed to deterioration or loss. Hence they had a stipulation for a forfeiture on the

Taylor and als. *v.* Pierce and als.

part of the plaintiffs, if they failed to perform on their part, as well as for the payment of the actual damages. It seems that all this was not sufficient to secure a performance. By the terms of the extension, it seems to have been understood that the operation for the next year should make the stumpage amount to at least $4000, and for this purpose the plaintiffs were required to give notes for that sum; and they did give notes to the defendants, severally, according to their respective interests in the lands to be cut upon. No question seems to have been made or doubt entertained by either party, at that time, that timber enough could be found of the specified kind, quality and dimensions, to furnish that amount of stumpage. For aught that appears, the plaintiffs knew as much about the lands and the timber as the defendants did. They had had ample time to inquire and examine. By the endorsement on the permit, the plaintiffs were to pay *severally* to the defendants, so far as the notes were payment, the amount which belonged to each tenant in common, according to his interest in the land. It is not uncommon in contracts, to find some stipulations which are *joint*, while there are others which are *several*. Cleaves v. Lord, 3 Gray.

This action is founded upon a partial failure of the consideration of each of those notes. To whom have the plaintiffs made these payments, if they have made them at all, or had made them before this suit was commenced? Not to the defendants *jointly*, but to each one *severally*. If any action can be maintained for a partial failure of consideration, it should be an action against each one to recover money which he has received, more than he is justly and equitably entitled to hold.

We are of opinion that if the presiding justice should not have ordered a nonsuit upon this point, and we do not decide that he was bound to do so, he should have instructed the jury that, from the whole evidence, the plaintiffs had failed to prove a joint promise on the part of the defendants. For this cause we think the exceptions should be sustained,

and a new trial granted. We might stop here. But it may be advantageous to the parties to know our opinion upon some other points.

The defendants contended, that if there was timber enough on the premises of the quality named in the permit, *to pay the notes*, at the rates of stumpage agreed on, and that the plaintiffs, by putting on and keeping on teams, and using the diligence required by the permit, might have hauled; that the notes must be paid, and that the plaintiffs could set up no defence, unless they had done all the contract required, to haul the timber to pay the notes; but the court overruled the position, and instructed the jury that "if there was timber left on the premises, which the permit required to be hauled, and which the plaintiffs, by putting and keeping on the teams and using the diligence required by the permit, might have hauled, that was only a matter of damages to be allowed the defendants, in offset to the plaintiffs' claim, and that the rule of damages was the difference between the contract price of the timber so left and the present value of it; and that if the timber so left was worth as much now as the contract price, there would be no damages but interest on the same; or if there was no timber left, there would be no damages."

We are of opinion that this was erroneous. If the plaintiffs failed, by their own fault or neglect, to obtain timber enough to pay the $4000, they cannot set it up as a defence to the notes, or either of them, or make it the foundation of a suit for money had and received against the defendants, either jointly or severally.

The judge was requested to instruct the jury that the suit could not be maintained, because, at the date of the writ, the plaintiffs had paid nothing on the notes, but the amount of stumpage on the timber cut, and which they had credited in their account annexed. He declined to do so.

In this case we do not regard the notes, *per se*, as money in the hands of the defendants. They were not taken as cash. A lien was stipulated for, on all the timber cut, to

Taylor and als. *v.* Pierce and als.

secure their payment. The notes taken by Prentiss and by the Pierces still remained in their hands as unpaid, except so much as was admitted by the plaintiffs to be due for stumpage on timber cut after July 1, 1854. Neither of these two defendants, therefore, could be said to have received any money from the plaintiffs, at the time the suit was commenced, which they were not entitled to hold. As to Jenness, it may be and probably is different. He had disposed of his note and received the value of it in money. An action may be maintained against him alone, if it shall prove to be the fact that the consideration of the note which he had and disposed of, has failed, in part, without any fault of the plaintiffs.

*For these reasons the exceptions must be sustained.*
*Verdict set aside, and new trial granted.*

HATHAWAY and CUTTING, J. J., concurred; TENNEY, C. J., RICE and APPLETON, J. J., concurred in the result only.

RICE, J. The action was prematurely brought, and for *that* reason there must be a new trial. A nonsuit could *not* have been ordered by the presiding judge, *in view of the whole evidence*, it being offered on both sides. 32 Maine R., 576. The action is properly *joint*. The permit is *joint*, and the receipt of the notes is *joint*. The recital of the distribution of the notes by the defendants *inter se se.* is wholly immaterial, and cannot affect the plaintiffs.

The measure of damages as agreed in the permit is " the full and liquidated sum of four hundred dollars  *  *  over and above the actual damage which the grantors may sustain." The actual damages were such only as " were the immediate and necessary result of the breach of the contract by the plaintiffs." Bridges v. Stickney, 32 Maine R., 361.

I concur in the result.

APPLETON, J. According to the terms of the receipt given by the defendants, " the notes *when paid* are to be in payment of four thousand dollars of the above stumpage," and

" the *owner's lien* on the timber to continue till all the papers are paid." The notes were therefore not to be regarded as payment, for if so, there could be no lien. The notes not having been paid, the action is prematurely brought.

The exceptions therefore must, for this reason, be sustained.